# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRUCE A. HANCOCK, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-14-1380-D |
| | ) |
| OCWEN LOAN SERVICING, | ) |
| LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **O R D E R**

Before the Court is Plaintiff's Motion for Partial Summary Judgment [Doc. No. 65], along with a Supplement [Doc. No. 76]; Defendant Ocwen Loan Servicing, LLC's ("Ocwen") Motion for Summary Judgment [Doc. No. 73]; and Defendant Experian Information Solutions, Inc.'s ("Experian") Motion for Summary Judgment [Doc. No. 90]. Both Ocwen and Experian have responded [Doc. Nos. 72 and 81, respectively] to Plaintiff's Motion, and Plaintiff has filed a "Combined Response" [Doc. No. 83], which the court construes as Plaintiff's reply. Plaintiff has failed to respond to Ocwen's Motion, but has responded [Doc. No. 91] to Experian's Motion. Experian has not replied.

Additionally before the Court is Plaintiff's Motion to Compel [Doc. No. 108], requesting the Court to order Ocwen to answer certain interrogatories and requests for production of documents. Ocwen has timely responded in opposition [Doc. No. 111], and Plaintiff has replied [Doc. No. 112].

**Background**

Plaintiff brings this suit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681-1681x and, as to Ocwen, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*[1] Plaintiff alleges that he had two real estate mortgages that were discharged in a 2012 Chapter 7 bankruptcy case,[2] but that Ocwen, the servicer on the loan, subsequently and wrongly began foreclosure proceedings regarding a mortgage lien on his home. Plaintiff further claims that Ocwen has furnished inaccurate information to credit reporting agencies ("CRAs"), specifically Experian,[3] and that such agencies have inaccurately reported information regarding the loan and other accounts, and failed to follow reasonable procedures or properly investigate. In connection therewith, Plaintiff alleges economic damages due to being "denied credit by several creditors." Second Am. Compl. [Doc. No. 43] at 12. Plaintiff further alleges emotional damages arising from "depression, panic attacks, insomnia," strain on his relationships, a significant drop in his academic grades "while trying to get this information corrected," and "extreme fright due to the foreclosure

---

[1] In his Motion and its Supplement, Plaintiff raises new claims including Experian's alleged inaccurate reporting on a number of additional accounts. However, the deadline to amend pleadings was June 18, 2015. *See* Scheduling Order [Doc. No. 62]. Accordingly, new claims can only be added with leave of court, which Plaintiff did not seek. Therefore, the Court will address only claims present in Plaintiff's Second Amended Complaint.

[2] Plaintiff only raises an issue as to one account (Account No. 713127) "not reflecting Plaintiff's discharge [in his] Chapter 7 Bankruptcy." Pl.'s Suppl. [Doc. No. 76] at 1.

[3] According to a November 3, 2015 Order of the Court [Doc. No. 75], Defendant Trans Union LLC was dismissed with prejudice. Therefore, the Court will address Plaintiff's allegations of inaccurate reporting as to Experian only.

proceedings." *Id.* Plaintiff seeks to recover statutory penalties and damages, to obtain a permanent injunction requiring the correction of his credit report, and requests by the instant motion partial summary judgment on his claims.[4]

Ocwen contends summary judgment in its favor is proper because "the Discharge Order of February 8, 2012, relied upon by [Plaintiff] was ineffective as to Ocwen['s] claims and Ocwen was justified in continuing to report on [Plaintiff's] credit." Ocwen Mot. [Doc. No. 73] at 4. Experian contends summary judgment in its favor is proper because Plaintiff's claims are an impermissible collateral attack on a purely legal dispute between a consumer and a creditor; Plaintiff failed to demonstrate that Experian's reporting is inaccurate or its procedures unreasonable; Plaintiff failed to provide evidence that Experian caused any of his alleged damages; and Plaintiff has failed to provide evidence of willfulness on the part of Experian. For the reasons stated below, the Court finds summary judgment in favor of Ocwen and Experian is proper.

**Standard of Review**

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[4] It is unclear why Plaintiff's Motion is for partial, as opposed to full, summary judgment, since he requests judgment in his favor as to all "the claims against all . . . Defendants." Pl.'s Mot. [Doc. No. 65] at 6. Additionally, Plaintiff's Motion fails to articulate reasons why he is entitled to summary judgment other than conclusory statements such as "the only material fact dispute raised by Ocwen is shown to be non-genuine" (Pl.'s Mot. [Doc. No. 65] at 3), and "there is no genuine material dispute" regarding Experian's violation of "subsection 1681n" (*Id.* at 4). However, because Plaintiff is seeking judgment on all remaining claims, the Court will treat his Motion as one for full summary judgment.

3

56(a). A material fact is one that "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Id.* at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**

Pursuant to Fed. R. Evid. 201, the Court, *sua sponte*, takes judicial notice of the records (including petitions, schedules, related documents, and orders) of *In re Bruce A.*

*Hancock, Jr.*, 10-17238 (Bankr. W.D. Okla.) and *In re Bruce A. Hancock, Jr.* 11-15686 (Bankr. W.D. Okla.), as well as the court file of related case *Hancock v. Homeward Residential Holdings, Inc., et. al.*, 15-CIV-1310-D (W.D. Okla.), and the present case file. In *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169 (10th Cir. 1979), the Tenth Circuit discussed the appropriateness of taking judicial notice in a case such as the present:

> [A] district court may utilize the doctrines underlying judicial notice in hearing a motion for summary judgment substantially as they would be utilized at trial. Thus, a court may . . . take judicial notice, whether requested or not . . . of its own records and files, and facts which are part of . . . public records. . . . The proposition that a court may take judicial notice of its records and files has frequently proved useful in summary judgment proceedings. The scope and reach of the doctrine of judicial notice has been enlarged over the years until today it includes those matters that are verifiable with certainty. Thus, this court has held that a court may, [s]ua sponte, take judicial notice of its own records and preceding records if called to the court's attention by the parties. Further, it has been held that federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.

*Id.* at 1171-72 (citations omitted); *see also U.S. v. Pursley*, 577 F.3d 1204, 1214 n.6 (10th Cir. 2009) (exercising the court's discretion "to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand") (citation omitted). Where necessary, the Court has used the

above-described records and case file to supplement the summary judgment record of undisputed facts.[5]

On July 5, 2005, Plaintiff purchased a property located at 13408 Prairie View Lane, Oklahoma City, OK 73142. *See* Ocwen Brief [Doc. No. 15] at 2. In connection with this purchase, Plaintiff executed a note secured by a mortgage with GreenPoint Mortgage Funding, Inc. ("GreenPoint"), Account No. 87040200, in the amount of $112,400.00. *See* Note [Doc. No 1-10, CIV-15-1310 (W.D. Okla.)] at 1. Plaintiff subsequently defaulted on the loan, and GreenPoint filed for foreclosure on March 6, 2008 ("Foreclosure Action").[6] *See* Ocwen's Brief [Doc. No. 15] at 2. In December of that same year, GreenPoint "assigned, sold, or transferred" its servicing rights to Countrywide Home Loans Servicing LP ("Countrywide"), which represented the account on its books as Account No. 22154350. *See* Letter [Doc. No. 1-21, CIV-15-1310 (W.D. Okla.)] at 1. A final judgment was entered in the Foreclosure Action on August 7, 2009. *See* Ocwen's Brief [Doc. No. 15] at 2.

On December 1, 2010, Plaintiff filed for bankruptcy in the Western District of Oklahoma, *In re Bruce A. Hancock, Jr.*, 10-17238 ("Chapter 13 Bankruptcy"). Plaintiff listed the GreenPoint loan, Account No. 87040200, as a secured debt. *See* Schedule D [Doc. No. 15, 10-17238 (Bankr. W.D. Okla.)] at 9. On January 12, 2011, the Bankruptcy Court

---

[5] The Court will reference every document's source case in its subsequent citation, unless the document derives from the present case file.

[6] The Foreclosure Action was filed in the District Court of Oklahoma County, State of Oklahoma, under case number CJ-2008-2068.

entered an Order regarding Plaintiff "permanently disqualif[ing] from discharge in any future bankruptcy" all of Plaintiff's current debts pursuant to 11 U.S.C. § 349(a).[7] Order [Doc. No. 30, 10-17238 (Bankr. W.D. Okla.)] at 1-2.

In 2011, Plaintiff filed a subsequent bankruptcy petition in the Western District of Oklahoma, *In re Bruce A. Hancock, Jr.* 11-15686 ("Chapter 7 Bankruptcy"). Plaintiff listed the GreenPoint loan, "Bank of America Account No. 22154350,"[8] as a secured debt. *See* Schedule D [Doc. No. 13, 11-15686 (Bankr. W.D. Okla.)] at 8. On February 8, 2012, the Bankruptcy Court entered an Order granting Plaintiff a discharge. Discharge of Debtor [Doc. No. 1-1, CIV-15-1310 (W.D. Okla.)] at 1. In December of that same year, U.S. Bank, N.A., became the new owner of the GreenPoint loan. *See* Assignment of Mortgage [Doc. No. 1-11, CIV-15-1310 (W.D. Okla.)] at 1. In November, 2013, Bank of America, then-servicer for U.S. Bank, N.A., transferred its servicing rights to Ocwen. *See* Notice of Servicing Transfer [Doc. No. 1-20, CIV-15-1310 (W.D. Okla.)] at 1. At that point, Bank of America Account No. 22154350 became Ocwen Account No. 7131270675. *See id.*

---

[7] There are two options for dismissal under 11 U.S.C. § 349(a) that differ from the general rule that a dismissal is without prejudice to a future petition or ability to obtain a discharge: (1) a 180-day lockout from the bankruptcy court provided by § 109(g), or (2) a denial of discharge in any future case of debts that were dischargeable in the present case. *In re Norton*, 319 B.R. 671, 674 (Bankr. D. Utah 2005). The second option should only be used if the debtor's conduct is egregious. *Id.* The court in *Norton* phrased it this way: "[a]ll debtor's debts incurred prior to the current filing date . . . are nondischargeable in any subsequent case this debtor may file." *Id.* at 685.

[8] There is no documentation in the bankruptcy records, related case file, or this case file confirming the exact date the servicer changed from Country Wide to Bank of America.

In March 2014, Plaintiff disputed Experian's reporting of Ocwen, Account No. 7131270675, and American Education Services ("AES"), Account No. 4475080879PA0. *See* Second Am. Compl. [Doc. No. 43] at 7. Plaintiff claimed the reporting of these accounts should have reflected "included in bankruptcy." *See* Dispute Log [Doc. No. 76-2]. In response, Experian investigated the disputed debts and sent notice to both Ocwen and AES; Ocwen and AES each verified the respective accounts as accurately reported. *See* Experian's Mot. [Doc. No. 90] at 2. Accordingly, Experian did not change the report regarding the disputed debts to reflect the 2012 discharge.

## Analysis

### I. Fair Credit Reporting Act

**A. Ocwen**

Plaintiff alleges Ocwen violated §§ 1681s–2(a) and 2(b), 1681o, and 1681n of FCRA. *See* Pl.'s Mot. [Doc. No. 65] at 3. Under 2(a), a furnisher of information shall not "furnish any information relating to a consumer to any [CRA] if the person knows or has reasonable cause to believe that the information is inaccurate." 28 U.S.C. § 1681s–2(a). Under 2(b), once a furnisher has received notice of a dispute from a credit reporting agency ("CRA"), the furnisher is required to:

> (1) investigate the disputed information; (2) review all relevant information provided by the CRA; (3) report the results of the investigation to the CRA; (4) report the results of the investigation to all other CRAs if the investigation reveals that the information is incomplete or inaccurate; and (5) modify, delete, or permanently block the reporting of the disputed information if it is determined to be inaccurate, incomplete, or unverifiable.

*Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1178-79 (10th Cir. 2013) (quoting *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 Fed. Appx. 744, 750 (10th Cir. 2009)). "A consumer is entitled to actual damages for a negligent violation of . . . FCRA." *Id.* at 1179 (citing 15 U.S.C. § 1681o(a)). "'Under § 1681n(a), however, the consumer need not prove actual damages if the violation is willful, but may recover punitive damages and statutory damages." *Id.* (quoting *Birmingham v. Experian Info. Sol., Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011)).

In order to establish a prima facie case under FCRA, Plaintiff must show that the challenged credit report contained inaccuracies. *See Schueller v. Wells Fargo & Co.*, 559 F. App'x 733, 737 (10th Cir.), cert. denied, 135 S. Ct. 275, 190 L. Ed. 2d 203 (2014) (citing *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 37 (1st Cir. 2010)). Plaintiff has failed to show the information Ocwen furnished to the CRAs was inaccurate.

Prior to his Chapter 7 Bankruptcy discharge, Plaintiff's indebtedness was determined to be non-dischargeable in the Chapter 13 Bankruptcy Order. Specifically, the Court held that "the debtor shall remain liable for any and all of his debts which were potentially subject to discharge as a result of the filing of his bankruptcy petition on December 1, 2010." Order

9

[Doc. No. 30, 10-17238 (Bankr. W.D. Okla.)] at 1. This included the Ocwen loan in question as demonstrated on Plaintiff's Chapter 13 Bankruptcy Schedule D. Accordingly, Ocwen was entitled to furnish related information to Experian and other CRAs because it believed, correctly, that the information it provided regarding Plaintiff's debt was accurate. Additionally, Ocwen's subsequent investigation showed no change in the information.

Because Plaintiff has failed to establish a prima facie case against Ocwen on his FCRA claims, there exists no genuine issue of material fact as to whether Ocwen furnished inaccurate information to any CRAs, or failed to take proper investigative measures. Accordingly, Ocwen is entitled to judgment as a matter of law.

**B. Experian**

Plaintiff alleges Experian failed to follow reasonable procedures in its reporting and failed to investigate certain accounts upon Plaintiff's dispute, thereby violating §§ 1681e and 1681n of FCRA. *See* Second Am. Compl. [Doc. No. 43] at 2-3. However, Plaintiff again fails to establish a prima facie case on either FCRA claim, and Experian is entitled to summary judgment as a matter of law.

Subsection (b) provides: "Whenever a [CRA] prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "If a consumer reasonably disputes the . . . accuracy of the information in his . . . file, [he] may communicate his disagreement to the [CRA] and thereby trigger the agency's duty to

reinvestigate . . . . A negligent violation . . . subjects the credit reporting agency to liability for actual damages . . . . A wilful violation further subjects the agency to punitive damages [under § 1681n]." *Jones v. Credit Bureau of Garden City, Inc.*, 703 F.Supp. 897, 901 (D. Kansas 1988).

"[A] showing of inaccuracy is an essential element of a § 1681e(b) claim." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008) (quoting *Dickens v. Trans. Union Corp.*, 18 Fed. Appx. 315, 319 (6th Cir. 2001) (unpublished); *see also Eller v. Trans Union, LLC*, 739 F.3d 467, 473 (10th Cir. 2013); *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 267 n.3 (5th Cir. 2000). This is because "FCRA is intended to protect consumers against the compilation and dissemination of inaccurate credit information." *DeAndrade*, 523 F.3d at 67 (citing *Equifax v. Fed. Trade Comm'n*, 678 F.2d 1047, 1048 (11th Cir.1982) (noting the stated purpose of FCRA is "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report") (citations omitted); S.Rep. No. 108–166, 108th Cong., 1st Sess. 5–6 (2003) ("The driving force behind the [1996 amendments to . . . FCRA] was the significant amount of inaccurate information that was being reported by consumer reporting agencies and the difficulties that consumers faced getting such errors corrected.").

Plaintiff has failed to present evidence raising a triable issue concerning the presence of any inaccuracy regarding the information supplied to Experian by Ocwen. Plaintiff has also failed to demonstrate an inaccuracy regarding the AES account in question. It reflects

11

"Paid, Closed" as of August 2008. *See* Experian Report [Doc. No. 65-3] at 6. Because it was no longer a debt at the time of Plaintiff's discharge, it would be inaccurate to report it as "included in bankruptcy" as requested by Plaintiff.

Because Plaintiff lacks evidence on an essential element – that the challenged credit report contained inaccurate information, the Court need not inquire further as to the reasonableness of Experian's procedures. Therefore, the Court finds summary judgement in favor of Experian is proper on Plaintiff's FCRA claims.

## II. Real Estate Settlement Procedures Act

Plaintiff claims Ocwen violated RESPA, 12 U.S.C. § 2605(e)(3),[9] by continuing to report information to CRAs that Ocwen knew was disputed by Plaintiff. *See* Second Am. Compl. [Doc. No. 43] at 2. Specifically, Plaintiff argues that "[w]hen [he] made his dispute [to Experian on] March 21, 2014, the [Ocwen loan] should have stopped being reported by [Ocwen] for 60 days." Second Am. Compl. [Doc. No. 43] at 11.

Plaintiff's RESPA claim fails for two reasons. First, Plaintiff failed to show that Ocwen's duty under § 2605(e)(3) was triggered by Plaintiff's March 2014 dispute with Experian. Section (e)(3) of RESPA is predicated on a borrower's "qualified written

---

[9] "During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any [CRA] (as such term is defined under section 603 of the Fair Credit Reporting Act [15 USCS § 1681a])." 12 U.S.C. § 2605(e)(3).

12

request"[10] made to the servicer. *See* 12 U.S.C. § 2605(e)(1)(A) (requiring the "servicer of a federally related mortgage loan [to] receive[] a qualified written request from the borrower (or an agent of the borrower) . . ." before the servicer's duty is triggered). Plaintiff does not claim that he personally made a qualified written request to Ocwen, but seems to suggest that Experian's notification to Ocwen of disputed reporting was in fact a "qualified written request." To be so, the Court would have to treat Experian as Plaintiff's agent for the purposes of RESPA. 12 U.S.C. § 2605(e)(1)(A). Plaintiff has failed to make this argument, and the Court declines to do so for him.

Second, even if Plaintiff could establish that he made a qualified written request to Ocwen in March 2014, the statute does not require that Ocwen make sure the account is no longer reported for 60 days. Rather, it prevents a servicer from "provid[ing] [any] information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request." 12 U.S.C. § 2605(e)(3). The information Plaintiff disputes had already been reported by Ocwen to Experian prior to March 2014. Plaintiff has failed to show that Ocwen provided additional information to Experian in the 60-day period that followed Experian's notice to Ocwen of Plaintiff's dispute.

For the above-stated reasons, the Court finds summary judgement in favor of Ocwen is proper on Plaintiff's RESPA claim.

---

[10] A "qualified written request" is defined as a "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that . . . enables the servicer to identify . . . the name and account of the borrower; and . . . includes a statement of the reasons for the belief of the borrower . . . that the account is in error . . . ." 12 U.S.C. § 2605(e)(1)(B).

**Conclusion**

Accordingly, the Court hereby **GRANTS** Ocwen's and Experian's Motions for Summary Judgment [Doc. Nos. 73 and 90, respectively], and **DENIES** Plaintiff's Motion for Partial Summary Judgment [Doc. No. 65]. In light of the foregoing, the Court further **DENIES** Plaintiff's Motion to Compel [Doc. No. 108] as moot. A separate judgment in favor of Defendants will be entered accordingly.

IT IS SO ORDERED this 18th day of August, 2016.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE